```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
ALEXSAM, INC.,                                    :
                                                  :
                              Plaintiff,          :         REPORT &
                                                  :         RECOMMENDATION
              -against-                           :         15-CV-2799 (ILG) (SMG)
                                                  :
MASTERCARD INTERNATIONAL INC.,                    :
                                                  :
                              Defendant.          :
----------------------------------------------------------------------x
```
GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

This is a diversity action for breach of contract brought by Alexsam, Inc. ("Alexsam" or "Plaintiff") against Mastercard International Inc. ("Mastercard" or "Defendant"). Alexsam's breach of contract claim arises out of a license agreement entered into by the parties in May 2005. Compl. ¶ 1, Docket Entry 1. The agreement licensed Mastercard to engage in transactions with technology covered by two patents owned by Alexsam. In exchange, Mastercard was required to provide Alexsam with a detailed monthly report of licensed transactions and to pay for each such transaction at a rate set forth in the agreement. Compl. ¶ 12. Plaintiff alleges that from as early as April 11, 2008, Mastercard repeatedly failed to report accurately and make payments for transactions that were licensed under the agreement. Compl. ¶¶ 15, 22–26.

In September 2015, Mastercard filed an answer raising several affirmative defenses and asserting counterclaims against Alexsam seeking, *inter alia*, a declaration of invalidity of the licensed patents. Answer ¶¶ 71–72, 93–94, Docket Entry 16. Mastercard also claims that the agreement was terminated by virtue of *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013), where the Federal Circuit held that transactions similar to the ones at issue here did not infringe Alexsam's patents, and *Alexsam, Inc. v. Gap, Inc.*, 621 F. App'x 983 (Fed. Cir. 2015), where the

Federal Circuit found certain applicable claims of the licensed patents to be invalid. *See* Answer ¶¶ 118, 131. In March 2017, to advance these contentions, Defendant petitioned the Patent Trial and Appeal Board ("PTAB") for a Covered Business Method ("CBM") review of the licensed patents. *See* Patrick Decl. Ex. A ("Petition 1"), Docket Entry 125-3; Patrick Decl. Ex. B ("Petition 2"), Docket Entry 125-4, (collectively, the "Petitions"). The two Petitions are quite similar; each, though, is directed at a different one of the two patents that are covered by the License Agreement.

Plaintiff now moves for leave to file a supplemental complaint to add an additional claim for breach of contract based upon Defendant's petitioning of the PTAB. Pl.'s Mot. for Leave to File a Suppl. Compl. ("Motion to Supplement"), Docket Entry 187. Defendant opposes Plaintiff's Motion to Supplement primarily on futility grounds. Mastercard International Incorporated's Opp'n to Alexsam's Mot. for Leave to File an Am. Compl. ("Opposition"), Docket Entry 192. For the reasons set forth below, I respectfully recommend that Plaintiff's Motion to Supplement be denied.

## FACTS

As noted, this case arises out of a license agreement entered into by the parties in May 2005 (the "Agreement" or "L.A."). Compl. ¶ 1. Under the Agreement, Mastercard was granted a non-exclusive, non-transferrable license to use two Alexsam-owned patents, U.S. Patent No. 6,000,608 (the "'608 patent") and U.S. Patent No. 6,189,787 (the "'787 patent") (collectively, the "Licensed Patents"). *See* L.A. ¶ 2.1, Docket Entry 1-6. In particular, Mastercard was granted a license to use the Licensed Patents "to process and enable others to process Licensed Transactions," a term defined in the Agreement. *Id.* In exchange, Mastercard was obligated to provide Alexsam with monthly written reports identifying the number of Licensed Transactions that took place during

the preceding month, along with payment for each covered transaction according to the rates set forth in the Agreement.  L.A. ¶¶ 4.1–4.2.

Eventually, the parties' relationship soured, leading Alexsam to initiate this lawsuit in May 2015.  Compl. ¶¶ 21–27.  Now, in response to Mastercard's filing of Petitions before the PTAB, Alexsam moves for leave to supplement its complaint to add an additional allegation of breach of contract.  Alexsam alleges that Mastercard violated the Agreement's Sole and Exclusive Venue Provision (the "Forum Selection Clause" or "Venue Provision") by petitioning the PTAB for CBM review of the Licensed Patents, instead of litigating the validity of the Licensed Patents solely in this Court.  Motion to Supplement at 9–10.

## DISCUSSION

I. Legal Standard

A court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  "The standard to be applied when considering an application for leave to amend or supplement a pleading is the same.  Leave to amend or supplement a complaint should be freely given by a court when justice so requires."  *Graves v. Deutsche Bank Sec., Inc.*, No. 07-cv-5471, 2009 WL 735076, at *3 (S.D.N.Y. Mar. 20, 2009), *aff'd*, 548 F. App'x 654 (2d Cir. 2013) (citing *Gittens v. Sullivan*, 670 F. Supp. 119, 123–24 (S.D.N.Y. 1987)).  Nevertheless, and despite the liberality of the Rule, leave to amend or supplement should not be granted "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

3

Mastercard challenges Plaintiff's proposed supplement primarily on futility grounds and bears the burden of establishing that it would be futile. *See Arnold v. Research Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 283 (E.D.N.Y. 2016). "Amendment is futile where the 'proposed amended complaint would be subject to immediate dismissal.'" *Coalition for a Level Playing Field, L.L.C. v. Autozone, Inc.*, 813 F. Supp. 2d 557, 565 (S.D.N.Y. 2011) (quoting *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999)). Thus, "the legal standard for futility is identical to the standard for dismissing a claim pursuant to Rule 12(b)(6), [and] a court evaluating a motion to amend a pleading must [therefore] take the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Steele v. Paypal, Inc.*, No. 05-cv-1720, 2006 WL 3612852, at *1 (E.D.N.Y. Dec. 11, 2006) (citation omitted). By contrast, legal conclusions and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *19 Recordings Ltd. v. Sony Music Entm't*, 165 F. Supp. 3d 156, 160 (S.D.N.Y. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Ultimately, "[t]he decision to grant or deny a motion to amend lies within the sound discretion of the district court." *UMG Recordings, Inc. v. Lindor*, No. 05-cv-1095, 2006 WL 3335048, at *1 (E.D.N.Y. Nov. 9, 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

II. <u>Futility of the Proposed Supplemental Claim</u>

Plaintiff's Motion to Supplement seeks to add an additional allegation of breach of contract. Alexsam contends that Mastercard violated the License Agreement's Venue Provision by filing the Petitions with the PTAB. The Agreement's Venue Provision reads, in relevant part, as follows:

> <u>Sole and Exclusive Venue.</u>  Each party irrevocably agrees that any legal action, suit or proceeding brought by it in any way *arising out of this Agreement* must be brought solely and exclusively in the *United States District Court for the Southern or Eastern District of New York or in the state courts of the State of New York* and

> irrevocably accepts and submits to the sole and exclusive jurisdiction of each of the aforesaid courts in personam, generally and unconditionally with respect to any action, suit or proceeding brought by it or against it by the other party . . . .

L.A. ¶ 17 (emphasis added). Alexsam claims that the parties intentionally chose not to include the Patent and Trademark Office ("PTO") as a forum, even though there were procedures to have patents reexamined before the PTO at the time the parties executed the Agreement. Motion to Supplement at 3. Further, and in response to Mastercard's contention to the contrary, Alexsam argues that the Petitions "aris[e] out of" the Agreement within the meaning of the Venue Provision because: (1) Mastercard brought counterclaims against Alexsam seeking declarations of non-infringement and invalidity of the Licensed Patents in the instant case; (2) the counterclaims assert that, implicit within Alexsam's breach of contract claim, there is an allegation that Mastercard infringed the Licensed Patents; and (3) Mastercard could not have petitioned the PTAB for CBM review unless Mastercard had already been accused of or charged with infringement.[1] Answer ¶¶ 49–54, 75–79, Docket Entry 16; Reply in Supp. of Plaintiff's Motion for Leave to File a Supplemental Complaint ("Pl.'s Reply") at 5–6, Docket Entry 197.

Opposing Plaintiff's motion, Mastercard argues that the Petitions do not "arise out of" the Agreement within the meaning of the Forum Selection Clause, but instead arise more generally from federal patent law. Opposition at 6–8. Mastercard further contends that, even if the Petitions did arise out of the Agreement, enforcement of the Forum Selection Clause would violate public policy in favor of invalidating erroneously granted business method patents. *Id.* at 9–11.

---

[1] Section 18 of the Leahy-Smith America Invents Act ("AIA") provides that "[a] person may not file a petition for [CBM review] unless the person . . . has been sued for infringement of the patent or has been charged with infringement under that patent."). Pub. L. No. 112-29, § 18(a)(1)(B), 125 Stat. 284, 330 (2011) (codified at 35 U.S.C. § 321 note). "Charged with infringement means a real and substantial controversy regarding infringement of a covered business method patent exists such that the petitioner would have standing to bring a declaratory judgment action in Federal court." 37 C.F.R. § 42.302(a) (2016).

5

For the reasons stated below, the Court concludes that the Petitions do not arise out of the Forum Selection Clause. Even if they did, the Forum Selection Clause, to the extent it precludes petitions such as those brought by Mastercard before the PTAB, is void as against public policy. Further, Plaintiff's demand for damages comprising attorneys' fees it sustained in defending against the Petitions is an impermissible attempt to circumvent the American Rule. Thus, the Court concludes that the proposed supplement to the Complaint would be futile.

    a. <u>The Petitions Are Not Subject to the Forum Selection Clause</u>

Courts within this Circuit utilize a four-part analysis to determine the validity of a forum selection clause. *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007). First, the court must determine whether the clause was "reasonably communicated" to the party resisting enforcement; next, whether the clause is mandatory or permissive; and third, whether the claims and parties involved in the suit are subject to the clause. *Id.* at 383. If the first three requirements are met, the forum selection clause is presumptively enforceable, but the fourth step is to ascertain whether that presumption may be rebutted by showing that enforcement would be unreasonable or unjust. *Id.* (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362–63 (2d Cir. 1993)).

While the first and second prongs are clearly satisfied here, the third—whether the Petitions are subject to the Agreement—is in dispute. As noted above, Mastercard contends that its Petitions do not "arise out of" the Agreement. The Second Circuit has interpreted the phrase "arise out of" in accordance with its dictionary definition: "to originate from a specified source." *Id.* at 389 (quoting Webster's Third New International Dictionary 117 (1981)).

*Phillips* concerned the appeal of the district court's dismissal of the plaintiff's copyright claims pursuant to a forum selection clause in a recording contract that granted defendants the right to exploit plaintiff's music. *Id.* at 382. Similarly to the L.A., the contract at issue in *Phillips*

6

contained a forum selection clause that governed any legal proceedings that "ar[o]se out of" the agreement. *Id.* In enforcing the forum selection clause, the district court reasoned, "any dispute concerning the defendants' rights to exploit this music was primarily contractual because the defendants had acquired possession of the music legitimately under the contract." *Id.* at 383. The Second Circuit rejected this analysis, stating it did "not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' 'be associated with,' or 'arise in connection with' the contract." *Id.* at 389 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 644 (1985) (Stevens, J., dissenting) (distinguishing between scope afforded by phrases "arise" out of and "in relation to")). Rather, the Court reasoned that a claim "originates" from a contract when a party asserts rights or seeks to enforce duties under the contract. *Id.* at 391. Because the plaintiff in *Phillips* asserted rights predicated on his valid ownership of the copyrights to his music, his copyright claims did not arise out of the contract within the meaning of the forum selection clause. *Id.* at 390.

Similarly, the Petitions filed by Mastercard at issue here, while they invoke the existence of Alexsam's instant breach of contract action to establish standing, do not assert any rights or seek to enforce any duties under the License Agreement. Mastercard's rights as set forth in the Agreement are to process Licensed Transactions and grant sub-licenses under the Licensed Patents. License Agreement ¶¶ 1.3, 2.1. Conversely, Mastercard's duties under the Agreement are to pay Alexsam a fee per Licensed Transaction, provide Alexsam periodic reports regarding the Licensed Transactions, and afford Alexsam the opportunity to inspect its books and records. *Id.* ¶¶ 4.1, 4.2, 4.3. These rights and duties have no bearing on the substance of the Petitions, which sought a determination that the claims of the Licensed Patents were invalid as not patent-

7

eligible under 35 U.S.C. § 101, anticipated by prior art under 35 U.S.C. § 102, and/or obvious under 35 U.S.C. § 103.  Thus, while Alexsam's efforts to enforce the Agreement through the instant litigation may have motivated Mastercard to bring the Petitions, the Petitions did not arise out of the Agreement.  *See Sanford L.P., et al. v. Esselte AB*, No. 14-cv-7616, Memorandum and Order, slip op. (S.D.N.Y. Sept. 16, 2015) (holding that PTAB Petitions brought by the original owner of certain stock did not "arise out of" a stock purchase agreement transferring ownership of the challenged patents to the new owner of the stock).[2]

The PTAB denied the Petitions for lack of standing on September 21, 2017, reasoning that Mastercard had not been "charged with infringement" but merely sued for breach of the Agreement.  *See* Status Report by Mastercard Ex. A at 6 ("Even if resolution of the contract issues in the New York Action [referring to this case] ultimately requires a determination of whether certain transactions are 'covered' by the challenged patent, that possibility does not [mean] Petitioner has been 'sued for infringement.'"), 14–15 (discussing the Agreement's covenant not to sue), Docket Entry 137-1; Ex. B at 6, 14–15 (same), Docket Entry 137-2.  Although Alexsam emphasizes the PTAB's conclusion that Mastercard lacked standing to bring the Petitions, Pl.'s Reply at 3, the issue here is not whether Mastercard had standing, but whether the Petitions arose out the Agreement.  Accordingly, that the PTAB analyzed provisions of the Agreement to decide the threshold issue of standing is of no consequence.

Alexsam relies heavily on the decision in *Dodocase VR, Inc. v. MerchSource, LLC*, No. 17-cv-07088, 2018 WL 1475289 (N.D. Cal. Mar. 23, 2018), where the court interpreted the phrase "arising out of or under" in a forum selection clause liberally, in accordance with how similarly-worded arbitration clauses had been construed.  Based upon that liberal construction, the Court in

---

[2]  A copy of the cited decision was submitted by Mastercard as Exhibit B to its Opposition memorandum, Docket Entry 192-2.

8

*Dodocase* held that a PTAB petition challenging the validity of a patent did arise out of a license agreement authorizing use of the patented technology. *Id*. at *7.

The Second Circuit in *Phillips*, though, rejected the analogy to arbitration clauses relied upon in *Dodocase*. The *Phillips* Court reasoned:

> [W]e decline to import whole the interpretive guidelines developed by the federal courts to assess the scope of arbitration clauses into the present context. . . [A]ssessment of the scope of arbitration clauses is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., which establishes 'as a matter of federal law' that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,' including where 'the problem at hand is the construction of the contract itself.'. . . While we do not overlook the Supreme Court's emphatic endorsement of freely negotiated and reasonable forum selection clauses, or our own commitment to enforcing applicable forum clauses, the absence of a congressional policy on forum clauses prompting us to err on the side of coverage is significant.

*Id.* at 389–90 (internal citations omitted). Rather, having emphasized that a forum selection clause "is a creature of contract," *Phillips* held instead that a dictionary definition should be applied to construe the meaning of a forum selection clause. *Id.* at 387, 390.

Had the PTAB determined that Mastercard had standing to challenge the validity of the '608 and '787 patents, it could have resolved the Petitions without regard to any of the terms of the Agreement. Moreover, any person who has been sued for or charged with infringement of a CBM patent is entitled to petition the PTAB to reexamine the patent claims; a license agreement between that person and the patent owner is not a statutory prerequisite to PTAB review. Accordingly, the Petitions do not arise out of the Agreement.

> b. <u>Enforcing the Forum Selection Clause to Preclude Petitioning for PTAB Review Would Be Unreasonable and Unjust</u>

Even where a forum selection clause is presumptively enforceable under the first three prongs of the *Phillips* analysis, a party may overcome that presumption by showing that enforcement would be "unreasonable or unjust." *Id.* at 383–84. A forum selection clause may be

9

deemed unreasonable or unjust if "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Id.* at 392 (citing *Roby*, 996 F.2d at 1363).

Even if Defendant's Petitions did arise out of the Agreement, enforcement of the Agreement's Forum Selection Clause would be unfair and contravene a compelling public policy. First, enforcement would be unfair because, at the time they entered into the Agreement, the parties could not have contemplated that the Forum Selection Clause would preclude Mastercard from seeking CBM review from the PTAB for the simple reason that review of that sort did not yet exist. Congress implemented CBM review at the PTAB in 2012—seven years *after* the parties negotiated and executed the Agreement. Under New York law, contracts should be "interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992). The parties could not have intended to preclude what, at the time, did not exist.

Alexsam acknowledges that the PTAB is a "fairly new forum" but points out that the parties chose not to include the PTO in the Forum Selection Clause even though there were other patent review procedures available when the Agreement was executed. Motion to Supplement at 3. While there were review mechanisms available in 2005 known as *inter partes* and *ex parte* reexaminations, they were limited to prior art challenges based on patents and printed publications.[3] The AIA authorized the PTAB to invalidate a business method patent on any

---

[3] Roger Shang & Yar Chaikovsky, *Inter Partes Reexamination of Patents: An Empirical Evaluation*, 15 Tex. Intell. Prop. L.J. 1, 6 (2006).

10

statutory ground—including unpatentable subject matter under § 101, a ground not previously permitted in reexamination proceedings and not currently available in *inter partes* review.[4]   In fact, § 101 was one of the grounds upon which Mastercard proceeded in its Petitions.  Petition 1 at 18; Petition 2 at 17.

Enforcement of the Forum Selection Clause would also contravene the public policies articulated in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), which eliminated the rule prohibiting licensees from challenging the validity of licensed patents.  The *Lear* Court reasoned as follows:

> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain.  Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery.  If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification.

*Id.* at 670.  Cases have concluded that *Lear* requires courts to "weigh the federal policy embodied in the law of intellectual property against even explicit contractual provisions and render unenforceable those provisions that would undermine the public interest."  *Idaho Potato Comm'n v. M & M Produce Farm & Sales*, 335 F.3d 130, 137 (2d Cir. 2003); *see also Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 188 (2d Cir. 1977) ("*Lear* established that removing restraints on commerce caused by improperly-held patents should be considered more important than enforcing promises between contracting parties.  Thus, the seeming inequity of allowing a licensee to keep his license while he attacks the validity of the licensor's patent is outweighed by

---

[4]   *See* 35 U.S.C. §§ 301, 302, 311 (2006) (amended by Pub. L. 112-29, §§ 6(a), 20(j)(1), Sept. 16, 2011, 125 Stat. 299).  *Compare* 35 U.S.C. § 311(b) ("A petitioner in an *inter partes* review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."), *with* 35 U.S.C. § 321(b) ("A petitioner in a post-grant review may request to cancel as unpatentable 1 or more claims of a patent on any ground that could be raised under paragraph (2) or (3) of section 282 (b) (relating to invalidity of the patent or any claim)", *and* AIA § 18(a)(1) (stating that CBM review proceedings "shall be regarded as, and shall employ the standards and procedures of, a post-grant review").

11

the public interest in placing no impediment in the way of those in the best position to contest the validity of the underlying patent.").

The public policy concerns identified in *Lear* are particularly compelling in this case in light of the history of CBM review. Following the Federal Circuit's decision in *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998), holding that business methods were patentable subject matter under 35 U.S.C. § 101, the PTO experienced an unexpected deluge of business method patent applications.[5] The U.S. Supreme Court reined in the standard for determining patentability of business method patents in *Bilski v. Kappos*, 561 U.S. 593 (2010), but in the intervening twelve years, the PTO approved thousands of applications that would not have been accepted under *Bilski*.[6] *See* 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl) ("[T]he expectation [is] that most if not all true business-method patents are abstract and therefore invalid in light of the *Bilski* decision."); *id.* at S1364 (statement of Sen. Schumer) ("[C]ertain business method patents . . . are generally of dubious quality because unlike other types of patents, they have not been thoroughly reviewed at the PTO due to a lack of the best prior art."). The resulting surge in litigation concerning business method patents after *Bilski* was the impetus for the CBM provisions of the AIA. *Id.* at S1363 (statement of Sen. Schumer)

---

[5] "The number of new applications of [business method patents] increased from 1370 in Fiscal Year 1998 to 2600 in Fiscal Year 1999 and to 7800 in Fiscal Year 2000. The number of patents issued from these types of applications increased from a total of 447 prior to 1986 to a total of 2,850 as of the end of Fiscal Year 1999." Chung K. Pak, *Patenting E-Commerce Inventions: Perspective from an Administrative Patent Judge*, 85 J. Pat. & Trademark Off. Soc'y 447, 449 (2003). *See also In re Bilski*, 545 F.3d 943, 992 (Fed. Cir. 2008) (en banc) (stating that over 40,000 business method patent applications had been filed since *State Street Bank* was decided).

[6] *State Street Bank* held that the "transformation of data, representing discrete dollar amounts, by a machine through a series of mathematical calculations into a final share price, constitutes a [patent-eligible invention] because it produces 'a useful, concrete and tangible result." 149 F.3d at 1373. The Federal Circuit in *In re Bilski* held that the *State Street* test was "inadequate" and "should no longer be relied on," and instead declared that the sole test for patent-eligible subject matter is whether "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." 545 F.3d at 954. The U.S. Supreme Court affirmed but criticized this decision in *Bilski* and held that this so-called "machine-or-transformation test" was not the sole test for patent eligibility under § 101 but was simply "a useful and important clue, an investigative tool." 561 U.S. at 604.

(asserting that *State Street Bank* "created a flood of poor quality business method patents and a cottage industry of business method patent litigation"); 157 Cong. Rec. H4496 (daily ed. June 23, 2011) (statement of Rep. Grimm) (describing the CBM provisions of the AIA as "one of the legislation's most important reforms, a crackdown on low-quality business method patents"). This Court expresses no opinion whatsoever about the Licensed Patents specifically. However, in considering the public policy implications of enforcing the Forum Selection Clause in this case to preclude PTAB review, the rationale underlying Congress' decision to provide for PTAB review of business method patents bears emphasis.

Alexsam concedes that prohibiting licensees from challenging the validity of licensed patents is generally improper, but stresses that Mastercard is not precluded by the Forum Selection Clause from challenging the patents in state and federal New York courts. Motion to Supplement at 9–10; Pl.'s Reply at 7. While district courts are authorized to decide questions of patent validity and infringement, a primary purpose of CBM review is to provide an inexpensive and efficient alternative to full-fledged litigation. In furtherance of this goal, the CBM provisions of the AIA provide that, if there are parallel proceedings before the PTAB and a district court alleging patent infringement, the court should consider four factors to determine whether to grant a motion to stay: "1) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial; 2) whether discovery is complete and whether a trial date has been set; 3) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and 4) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18 (b)(1). Although the matter is committed to the district court's discretion, a natural inference is that Congress thought the PTAB generally to be a preferable forum over district courts in deciding cases involving business method patents.

13

The accompanying legislative history also reflects this view. *See, e.g.*, 157 Cong. Rec. S1364 (statement of Sen. Schumer) ("[I]t is expected that, if a proceeding against a business method patent is instituted, the district court would institute a stay of litigation unless there were an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination."); *id.* at S1379 (statement of Sen. Kyl) ("[C]ongressional policy strongly favor[s] stays when [CBM] proceedings are instituted . . . .").

Finally, although patents enjoy a presumption of validity in district courts that may only be rebutted by "clear and convincing evidence that the patent is invalid," *Prestige Jewelry Int'l, Inc. v. BK Jewellery HK*, No. 11-cv-2930, 2014 WL 11344395, at *9 (S.D.N.Y. Sept. 15, 2014) (quoting *In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008) (citing 35 U.S.C. § 282)), unpatentability need be proven only by a preponderance of the evidence in PTAB proceedings, 35 U.S.C. § 326(e). To require challenges to questionable patents to meet more stringent standards of proof in district courts when PTAB proceedings are available would contravene the public policies discussed above.

c. <u>The American Rule Prohibits Alexsam from Recovering Its Attorneys' Fees</u>

Finally, the proposed new breach of contract claim Alexsam seeks leave to bring is precluded by the rule that parties are responsible for their own legal fees. Alexsam seeks to recover damages on its proposed claim because it "hired counsel and incurred fees and expenses to handle the litigation before the PTO," Motion to Supplement at 2, but identifies no basis in law for this relief.

The Agreement contains a choice of law provision providing for the application of New York law. L.A. ¶ 16. New York adheres to the "American Rule," which provides that attorneys' fees "are incidents of litigation and a prevailing party may not collect them from the loser unless

an award is authorized by agreement between the parties, statute or court rule." *Baker v. Health Mgmt. Sys., Inc.*, 264 F.3d 144, 152 (2d Cir. 2001) (quoting *Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487 (1989)). New York courts have recognized a number of exceptions to this general rule, including: 1) when the defendant, with "actual malice," "intentionally [seeks] to inflict economic injury on plaintiff[ ] by forcing [him] to engage legal counsel"; 2) "where a breach of contract has caused a party to maintain or defend a suit against a third person"; 3) in an action by an insured against its insurer to require the insurer to defend a claim against it when the insurer seeks to disclaim coverage; and 4) as a consequence of frivolous conduct in litigation. *Versatile Housewares & Gardening Sys. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 241–42 (S.D.N.Y. 2011) (collecting cases). None of these exceptions are invoked here.

Courts are divided over whether a party may recover attorneys' fees for breach of a forum selection clause under New York law, with some courts finding that such damages are inconsistent with the American Rule and others reaching the opposite conclusion. *Compare Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 992 F. Supp. 278, 286 (S.D.N.Y. 1998) ("[D]efendants have breached the [forum selection] clause, and are liable to [the plaintiff] for the still uncompensated expenses it incurred defending the [other] action.") (citations omitted), *and Indosuez Int'l Fin., B.C. v. Nat'l Reserve Bank*, 304 A.D. 2d 429, 431 (1st Dep't 2003) ("[D]amages may be obtained for breach of a forum selection clause . . . and an award of such damages does not contravene the American Rule that deems attorneys' fees a mere incident of litigation.") (internal citations omitted), *with Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, No. 13-cv-4348, 2014 WL 3439620, at *12–*15 (S.D.N.Y. July 15, 2014) (denying claim for attorneys' fees and litigation expenses resulting from breach of forum selection clause), *and Versatile*, 819 F. Supp. 2d at 233 (same). This Court declines to follow *Allendale* and *Indosuez* because "the limited analysis in the

15

opinions means they are without a great deal of value as persuasive authority or as indicators of how the [New York] Court of Appeals would decide" the question. *Versatile*, 819 F. Supp. 2d at 243–45. Rather, the Court agrees that "[a]llowing [a party] to collect attorney's fees as damages simply by characterizing them as damages based on a breach of contract would create an exception that would swallow the American Rule . . . ." *Brown Rudnick*, 2014 WL 3439620 at *14.

Alexsam fails to identify any statute or rule authorizing recovery of its attorneys' fees. Likewise, the Agreement contains no provision for an award of fees in the event of a breach. "Although the incurring of attorneys' fees may be a foreseeable result of the breach of a forum selection clause, the New York rule is that any contractual abrogation of the American Rule must be by *express* contractual provision." *Versatile,* 819 F. Supp. 2d at 242 (emphasis in original) (citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp*., 418 F.3d 168, 177 (2d Cir. 2005) ("[C]ourts applying New York law should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract.") (internal quotation marks omitted)). Accordingly, an award of the attorneys' fees Alexsam incurred defending against the PTAB Petitions would be precluded by the American Rule. Alexsam's proposed new claim for breach of contract would, therefore, be futile, and leave to add that claim should therefore be denied.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion to supplement the complaint be denied. Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before October 30, 2018. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
October 16, 2018

*U:\#MS 2018-2019\Alexsam v. Mastercard (15cv2799) (ILG)\Supplemental Complaint\R&R re Motion to Supplement [187].docx*