```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ALEXSAM, INC.,                                    :
                                                  :
                                  Plaintiff,      :      REPORT &
                                                  :      RECOMMENDATION
                -against-                         :      15-CV-2799 (ILG) (SMG)
                                                  :
MASTERCARD INTERNATIONAL INC.,                    :
                                                  :
                                  Defendant.      :
------------------------------------------------------------------ x
```
GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

This case arises out of a patent license agreement entered into by the parties in 2005. Alexsam claims Mastercard breached the agreement by failing to pay royalties owed for conducting licensed transactions. In its answer, Mastercard raises affirmative defenses as well as counterclaims seeking, *inter alia*, declarations of invalidity and noninfringement of two Alexsam-owned patents. In March 2017, Mastercard petitioned the Patent Trial and Appeal Board ("PTAB") for a Covered Business Method ("CBM") review of the validity and patentability of Alexsam's patents. The PTAB denied Mastercard's petitions shortly thereafter. Mastercard now moves for summary judgment, contending that judicial estoppel prevents Alexsam from advancing arguments inconsistent with those it successfully asserted before the PTAB, and that those arguments preclude Alexsam's claims in this action against Mastercard. Alexsam, in turn, moves to dismiss Mastercard's counterclaims for failure to state a claim and for lack of subject matter jurisdiction in light of recent case law. For the reasons that follow, I respectfully recommend that Defendant's motion for summary judgment and Plaintiff's motion to dismiss both be denied.

## FACTS

As noted, this case arises out of a license agreement entered into by the parties in May 2005 (the "License Agreement" or "Agreement"). Compl. ¶ 1, Dkt. 1. The Agreement grants Mastercard a non-exclusive, non-transferrable license to conduct transactions covered by two Alexsam-owned patents, U.S. Patent No. 6,000,608 (the "'608 patent") and U.S. Patent No. 6,189,787 (the "'787 patent") (collectively, the "Licensed Patents"). *See* L.A. ¶ 2.1, Dkt. 1-6. In particular, Mastercard is authorized by the Agreement "to process and enable others to process Licensed Transactions," a term defined in the Agreement as transactions or processes "covered by one of the Licensed Patents." *Id.* ¶ 1.3. In exchange, Mastercard is obligated to provide Alexsam with monthly written reports identifying the number of Licensed Transactions that took place during the preceding month, along with payment for each covered transaction according to the rates set forth in the Agreement. *Id.* ¶¶ 4.1–4.2.

Alexsam initiated this lawsuit on May 14, 2015. Alexsam's complaint asserts a single claim for breach of contract alleging that Mastercard has underreported the number of licensed transactions it has conducted and failed to pay the amounts due under the Agreement. Compl. ¶¶ 21–27. In its answer, Mastercard raises several affirmative defenses as well as counterclaims that seek, *inter alia*, declaratory judgments of invalidity and noninfringement of the Licensed Patents. Answer and Counterclaims ¶¶ 71–72, 93–94, Dkt. 16.

On March 10, 2017, Mastercard filed petitions for CBM review of the Licensed Patents before the PTAB pursuant to Section 18 of the Leahy-Smith America Invents Act and 37 C.F.R. 42.300. *See* Patrick Decl. Ex. A (the "'608 Petition"), Dkt. 125-3; Patrick Decl. Ex. B (the "'787 Petition"), Dkt. 125-4, (collectively, the "Petitions"). Mastercard argued that it had standing to petition the PTAB for review because of the breach of contract claim Alexsam asserts against it in

2

this lawsuit. *See* Petitions at 4 ("Pursuant to 37 C.F.R. § 42.302(a), Petitioner is eligible to file this Petition because Patent Owner sued Petitioner for alleged breach of a patent License Agreement involving the [Licensed Patents]. Patent Owner has alleged that at least some of the Challenged Claims cover various products and services allegedly sold or performed by Petitioner. . . . As such, Petitioner has been 'charged with infringement.'") (citing 37 C.F.R. 42.302(a), which provides that only those who have been sued for or charged with infringement may file a petition for CBM review).

Shortly after the Petitions were filed, the PTAB ordered supplemental briefing regarding what effect, if any, a covenant not to sue provision in the Agreement (the "Covenant" or "Covenant Not to Sue") had on Mastercard's standing. '608 Decision at 2, Dkt. 137-1; '787 Decision at 2, Dkt. 137-2, (collectively, the "Decisions"). The Covenant reads:

> Covenant Not to Sue. Alexsam hereby agrees and covenants to not at any time initiate, assert, or bring any claim (in any court, administrative agency, or other tribunal, anywhere in the world) against MasterCard, for any claim or alleged liabilities of any kind and nature, at law, in equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, relating to Licensed Transactions arising or occurring before or during the term of this Agreement.

L.A. ¶ 2.2. On September 21, 2017, the PTAB denied the Petitions in largely identical decisions, reasoning that, because the Covenant Not to Sue "removes any imminent possibility that [Alexsam] could bring an infringement action against [Mastercard]," Mastercard lacked standing to petition the PTAB for CBM review. Decisions at 12, 15.

Mastercard filed its pending motion for summary judgment on July 11, 2018 ("Summ. J. Motion"). Dkt. 193. Alexsam filed its opposition on August 10, 2018 ("Summ. J. Opposition"), Dkt. 196, and Mastercard filed its reply on September 14, 2018 ("Summ. J. Reply"), Dkt. 199.

On October 7, 2015, Alexsam moved to dismiss Mastercard's counterclaims for failure to state a claim and lack of jurisdiction. Plaintiff Alexsam Inc.'s Motion to Dismiss Defendant/Third-

3

Party Plaintiff Mastercard International Incorporated's Counterclaims ("First Motion to Dismiss"), Dkt. 18. On November 4, 2015, Judge Cogan declined to dismiss Counts I through IV of Mastercard's counterclaims, but recharacterized Counts V, VI, VII, and VII as affirmative defenses. Dkt. 31. Alexsam now brings a second motion to dismiss, invoking among other things the PTAB's denial of Mastercard's Petitions on standing grounds. Alexsam, Inc.'s Renewed Motion to Dismiss Defendant Mastercard International Incorporated's Counterclaims ("Motion to Dismiss"), Dkt. 194. Mastercard submitted its opposition to the motion on August 10, 2018, Memorandum in Opposition to Alexsam's Motion to Dismiss ("MTD Opposition"), Dkt. 196, and Alexsam filed its reply on September 7, 2018, Reply in Support of Alexsam, Inc.'s Renewed Motion to Dismiss ("MTD Reply"), Dkt. 198.

## DISCUSSION

### I. Motion for Summary Judgment

As noted above, Mastercard's summary judgment motion rests on the contention that Alexsam is judicially estopped from prosecuting its claim for breach of contract. Judicial estoppel will generally apply if: (1) a "party's later position is clearly inconsistent with its earlier position," (2) the former position was "adopted in some way by the court in the earlier proceeding," and (3) the "party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (internal quotation marks omitted). The relevant question is whether a "party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010) (internal quotation marks omitted). Because the purpose of the estoppel is to "protect the integrity of the judicial process," *New Hampshire v.*

4

*Maine*, 532 U.S. 742, 749 (2001), it is properly applied only when "the risk of inconsistent results with its impact on judicial integrity is certain," *DeRosa*, 595 F.3d at 103. The prior inconsistent assertion, however, need not be made to a court of law; judicial estoppel may also apply to contentions made in administrative proceedings. *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000).

Mastercard argues that, "[b]ased on Alexsam's arguments before the PTAB that a covenant not to sue in the parties' License Agreement is 'sufficient to moot a claim for declaratory relief' involving the Licensed Patents, which the PTAB accepted by denying Mastercard's CBM Petitions seeking review of the Licensed Patents, . . . Alexsam is judicially estopped from now demanding royalties for Licensed Transactions that are 'covered by' the Licensed Patents." Summ. J. Motion at 2. The flaw in Mastercard's argument is that Alexsam never contended before the PTAB that the Covenant Not to Sue precluded its breach of contract claim, and the PTAB never held that it did.

As Alexsam emphasized to the PTAB, AIA Section 18(a)(1)(B) provides that only a party that has been sued for or charged with infringement may file a petition for CBM review of a patent.[1] Patent Owner's [Alexsam's] Response to Petitioner's Supplemental Brief [to the PTAB] Regarding Petitioner's Standing Under 37 C.F.R. § 42.302(a) at 3–4 ("Patent Owner's Supp. PTAB Response"), Dkt. 193-3. Because it had neither sued Mastercard for nor charged it with infringement, Alexsam argued, Mastercard lacked standing to petition the PTAB for CBM review. *Id.* at 4.

---

[1] Section 18 of the Leahy-Smith America Invents Act ("AIA") provides that "[a] person may not file a petition for [CBM review] unless the person . . . has been sued for infringement of the patent or has been charged with infringement under that patent."). Pub. L. No. 112-29, § 18(a)(1)(B), 125 Stat. 284, 330 (2011) (codified at 35 U.S.C. § 321 note). "Charged with infringement means a real and substantial controversy regarding infringement of a covered business method patent exists such that the petitioner would have standing to bring a declaratory judgment action in Federal court." 37 C.F.R. § 42.302(a) (2016).

5

In its analysis of standing, the PTAB likewise began with the language of AIA Section 18(a)(1)(B). Decisions at 5. The PTAB also considered the impact on the parties' standing dispute of the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). The Supreme Court held in *MedImmune* that a patent licensee is not required to "terminate or be in breach of its license agreement before it can seek a declaratory judgment that the underlying patent is invalid, unenforceable, or not infringed." *Id.* at 120–21, 137. In reaching its decision, the Supreme Court noted that the licensor in *MedImmune* had threatened to enjoin the licensee's sales if the licensee failed to pay royalties, presumably by claiming that those sales would infringe its patents. *Id.* at 128.

The PTAB acknowledged that, "[a]t first blush," *MedImmune* seems to suggest that Mastercard was likewise not required to terminate or breach its license agreement with Alexsam to have standing to petition for CBM review. Decisions at 10. Alexsam argued to the PTAB, however, that the Covenant Not to Sue removed any possibility that Alexsam might bring an infringement claim against Mastercard and that, because the Covenant "clarifies that Patent Owner [Alexsam] cannot sue Petitioner [Mastercard] for patent infringement," it "supports a finding that Petitioner lacks standing." Patent Owner's Supp. PTAB Response at 4–5. The PTAB considered Alexsam's argument, Decisions at 10, 12, and accepted it, reasoning that, "[u]nlike in *MedImmune*, the covenant not to sue provision in the parties' License Agreement removes any 'imminent' threat that Patent Owner could sue Petitioner for patent infringement. Accordingly, we conclude that Petitioner has not been 'charged with infringement' [and] has not established standing for filing the current Petition for CBM review," Decisions at 15 (internal citation omitted). The PTAB, in other words, determined that there was a critical distinction, determinative of standing, between a claim for breach of a license agreement and one for patent infringement.

6

Other courts have similarly recognized the material difference between a breach of contract claim and a claim for patent infringement. Like this lawsuit, *Leviton Manufacturing Co., Inc. v. Pass & Seymour, Inc.* involved a claim for breach of a licensing agreement. 2017 WL 3084404 (E.D.N.Y. July 19, 2017). The court held in *Leviton* that plaintiff's claim for breach did not trigger a provision of the agreement that applied only if plaintiff brought a "claim of infringement," reasoning as follows:

> Leviton has asserted a breach of contract cause of action. P&S argues that the complaint constitutes a "claim of infringement" because it reads like a patent infringement complaint and contains "detailed element-by-element comparisons" of P&S's 1597 GFCI to Leviton's '124 and '809 patents that are "typical of allegations in a complaint for patent infringement." But that is immaterial. Leviton has not brought a claim against P&S for patent infringement, nor asked for infringement damages, nor sought an injunction under the Patent Act, see 35 U.S.C. § 283. Rather, it has accused P&S of breach of contract and seeks only breach of contract damages.

2017 WL 3084404, at *3. Here, Alexsam, like plaintiff in *Leviton*, sues only for breach of contract, and has not asked for infringement damages or sought an injunction under the Patent Act.

Mastercard's argument, distilled to its essence, seems to be that both Alexsam and the PTAB have misconstrued the holding in *MedImmune*, and that, properly understood, the case holds that a licensee need not be sued for or charged with infringement to have standing to challenge a patent's validity; a claim for breach of a licensing agreement, regardless of any covenant not to sue, is sufficient. Summ. J. Reply at 4–5. However, whether Mastercard, on the one hand, or Alexsam and the PTAB, on the other, have more accurately distilled the holding in *MedImmune* has no bearing on Mastercard's pending motion. Rather, what controls the outcome of this motion, and what the discussion above makes clear, is that Alexsam never argued, and the PTAB never held, that the Covenant Not to Sue precludes Alexsam's claim for breach of the License Agreement—even if the Covenant undermines Mastercard's standing to challenge patent validity or infringement. Indeed, the PTAB explicitly declined to address the question of whether, by

7

bringing this breach of contract suit against Mastercard, Alexsam violated the Covenant Not to Sue.  Decisions at 13 n.3.

In sum, the positions Alexsam took before the PTAB are in no way inconsistent with those it has taken before this Court.  Both here and before the PTAB, Alexsam has consistently contended that the Covenant Not to Sue precludes any claim of infringement, but in no way restricts its claim for breach of contract.  Mastercard's motion for summary judgment based on judicial estoppel should therefore be denied.

## II. Motion to Dismiss

Alexsam's primary argument in support of its motion to dismiss Mastercard's infringement and invalidity counterclaims is similar to, and consistent with, its opposition to Mastercard's motion for summary judgment: Alexsam contends that, because it asserts only a breach of contract claim and not one for infringement, there is no case or controversy with respect to the validity of its patents or whether Mastercard has infringed them.  Motion to Dismiss at 6–8.  Mastercard contends in opposition that a demand for royalties is sufficient to support jurisdiction over its counterclaims.  MTD Opposition at 6–10.  Further, Mastercard contends that adjudication of its counterclaims is necessary to fully resolve the dispute between the parties.  *Id.* at 10–11.

Alexsam's motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) concerns dismissal for lack of subject-matter jurisdiction.  "A [counterclaim] is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  On a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court should dismiss counterclaims if "it appears beyond doubt that the defendants can prove no set of facts in support of their counterclaims which would entitle them to

8

relief." *O'Hearn v. Bodyonics, Ltd.*, 22 F. Supp. 2d 7, 10 (E.D.N.Y. 1998) (quoting *S.E.C. v. U.S. Environmental, Inc.*, 155 F.3d 107 (2d Cir. 1998)).  A court reviewing a 12(b)(6) motion does not weigh evidence that may be presented at a trial, but merely determines whether the counterclaims are legally sufficient. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court must accept the allegations of the counterclaims as true and construe all reasonable inferences in favor of the defendant.  *O'Hearn*, 22 F. Supp. 2d at 10–11 (citing *Connell v. Signoracci*, 153 F.3d 74 (2d Cir. 1998); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991)).

The fundamental problem with Alexsam's motion is that it has already been made and lost. Shortly after Mastercard filed its answer and counterclaims, Alexsam moved to dismiss the very same counterclaims challenged in its current motion.  First Motion to Dismiss.  United States District Judge Brian M. Cogan, who was then presiding over this case, denied Alexsam's motion in relevant part, ruling that

> Counts I through IV of defendant's counterclaims meet the requirements to bring claims for declaratory relief under the Declaratory Judgment Act.  See MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 127 S. Ct. 764 (2007). Again, whether declaratory relief is appropriate will depend, in part, on how the Court (or a jury) interprets the License Agreement, something the Court cannot do as a matter of law in the context of the current motion.

Order dated November 3, 2015, Dkt. 31.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992).  Courts generally will depart from the law of the case only if there is a change in controlling law, if new evidence becomes available, to correct a clear error, or to prevent manifest injustice.  *Id.*; *see also Schoenfeld v. Schneiderman*, 821 F.3d 273, 289 (2d Cir. 2016).  Thus, generally, there is a "strong presumption

against amendment of prior orders," including those that are interlocutory. *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 288 (2d Cir. 2011).

Here, Plaintiff does not allege the availability of new evidence or contend that Judge Cogan's ruling was clearly erroneous or led to a manifestly unjust result. Plaintiff argues, rather, that the Federal Circuit's decision in *First Data*, a recent decision by Judge Cogan, and the PTAB's denial of Mastercard's Petitions demonstrate a change in controlling law favorable to Alexsam's positions. I find these arguments unpersuasive.

Generally, "[t]o warrant disregarding law of the case, . . . a change in the law must truly be significant and controlling." *Sango v. City of New York*, 1989 WL 86995, at *6 (E.D.N.Y. July 25, 1989); *see also Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (noting that court's pretrial decisions "may not usually be changed unless there is an intervening change of controlling law") (internal quotation marks and citation omitted); *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (holding that "a court may depart from the law of the case where a fundamental change in the governing law impacts directly upon the parties' rights and obligations") (internal quotation marks and citations omitted). It is not enough that, in light of new case law, a party can "now make a more persuasive argument." *Sango*, 1989 WL 86995, at *6 (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)).

There has been no significant and controlling change in the law governing whether a licensee has standing to bring declaratory judgment counterclaims on facts similar to those present here. The recent Judge Cogan decision invoked by Alexsam is one of the cases discussed above in connection with Mastercard's summary judgment motion, *Leviton Mfg. Co. v. Pass & Seymour, Inc*. Judge Cogan's *Leviton* decision, however, does not address the circumstances under which a

10

patent licensee has standing to seek declaratory judgments of invalidity or noninfringement. Rather, *Leviton* concerned the enforceability of a clause in a settlement and license agreement that imposed enhanced royalties if the licensee unsuccessfully challenged the licensor's patents. 2017 WL 3084404, at *3. The agreement provided that the enhanced royalty provision would not apply if the licensor brought a "claim of infringement" against the licensee. *Id.* at *2. As discussed above, the court in *Leviton* distinguished between a claim for breach of a licensing agreement and one for infringement; the court held that the licensor's suit for breach was not a claim for infringement and did not provide a basis for avoiding the enhanced royalty provision. *Id.* at *3–4. The court was not called upon to decide whether, having been sued for breach, defendant Pass and Seymour had standing to counterclaim for declaratory judgments of invalidity and noninfringement.[2]

The second recent case invoked by Alexsam, *First Data Corp. v. Inselberg*, 870 F.3d 1367 (Fed. Cir. 2017) is similarly unhelpful to its position. Alexsam correctly points out that the court in *First Data* dismissed claims seeking declaratory judgments of patent invalidity and noninfringement. The court's holding, however, was not based upon the nature of the claims brought against the declaratory judgment plaintiffs, but upon the fact that the counterclaim defendants were not the owners of the patents in issue:

> First Data's claims seeking declaratory judgment of noninfringement would be frivolous because Inselberg and Interactive do not own any patents for which First Data could seek such judgment. First Data and Bisignano also would have to establish that they have standing and that their claim is ripe for adjudication. The relatively unique facts of this case show that, at the very least, the counterclaims and the declaratory judgment claims are not ripe at this time. . . . Because all parties agree that Inselberg and Interactive do not currently have an ownership interest in the patents at issue and cannot obtain such an ownership interest absent relief from a court, any potential infringement claim by Inselberg and Interactive in this case relies on the "contingent future event[]" of recovering title to the patents by having

---

[2] The enhanced royalty provision in *Leviton* was ultimately held by the court to be an unenforceable penalty. 2017 WL 3084404, at *6–7.

11

>a court invalidate the assignment agreement and order that the patents be returned to Inselberg and Interactive. . . . Until that time, . . . an infringement dispute between these parties is not ripe.

870 F.3d at 1374–75.

Finally, the PTAB decision in this case is directly on point. In concluding that Mastercard lacked standing to seek rulings regarding the validity of Alexsam's patents and whether Mastercard infringed them, the PTAB stated that, "although 'the Article III standing requirement for a 'case or controversy' does not apply to matters before' the PTO, the foregoing regulation has made it 'clear that it is the ability to seek relief in *Federal court* that is important to the standing inquiry. Accordingly, in our analysis of whether Petitioner has standing on the basis of being 'charged with infringement,' we have considered case law addressing when a party might have Article III standing to bring a declaratory judgment action." Decisions at 9 (quoting *Return Mail, Inc. v. United States Postal Service*, Appeal No. 2016-1502 (Fed. Cir. Aug. 28, 2017)) (internal citation omitted). A PTAB decision, though, is not controlling authority, and is therefore insufficient to overcome law of the case.

For all these reasons, Alexsam's motion to dismiss Mastercard's counterclaims is precluded by the law of the case. Accordingly, I respectfully recommend that Alexsam's motion be denied.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendant's motion for summary judgment and Plaintiff's motion to dismiss both be denied. Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before December 19, 2018. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal

the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
December 5, 2018

*U:\#Clerk Files\Decisions 2018-2019\Alexsam v. Mastercard -- Summary Judgment Motion - Motion to Dismiss R&R.docx*