UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ALEXSAM, INC.,

Plaintiff,

v.

MASTERCARD INTERNATIONAL INC.,

Defendant.
----------------------------------------------------------x

MEMORANDUM & ORDER

15- CV-2799 (ILG) (SMG)

GLASSER, Senior United States District Judge:

This is an action for breach of a patent license agreement, brought by Plaintiff Alexsam, Inc. ("Alexsam") against Defendant MasterCard International Inc. ("MasterCard"). (Compl. ¶ 1). The Court is in receipt of three Reports and Recommendations by Magistrate Judge Stephen M. Gold, dated June 11, 2018 ("June R&R"), October 16, 2018 ("October R&R") and December 5, 2018 ("December R&R"). (ECF Nos. 186, 200, 204). Alexsam objects to the June and December R&Rs. (ECF Nos. 188, 205). MasterCard objects to the December R&R. (ECF No. 204). Neither party objects to the October R&R.

For the reasons discussed below, Alexsam's objections are denied in their entirety. MasterCard's objection is granted. Accordingly, the June and October R&Rs are adopted in full and the December R&R is adopted in part.

## BACKGROUND

MasterCard processes payments between the banks of merchants and credit card holders. (Compl. ¶ 3). Alexsam holds two business method patents[1] for a multi-card transaction processing

---

[1] These are United States Patents Nos. 6,000,608 ("'608 Patent") and 76,189,787 ("'787 Patent"). (*See* June R&R 1).

system. (*Id.* ¶ 2). The novel aspect of Alexsam's system is its use of bank identification numbers to process prepaid cards on devices normally used for credit card transactions. (June R&R 3). This allows phone cards, gift cards, medical cards and customer loyalty cards to function like credit cards.

In a May 2005 agreement, Alexsam granted MasterCard a license to use the patents. (ECF No. 1-6, "License Agmt."). MasterCard in turn agreed to pay royalties for each transaction it processed using the patented method, and to provide a monthly accounting thereof. (*Id.* §§ 4.1, 4.2).

Alexsam sued for breach of the license agreement on May 14, 2015, alleging that MasterCard violated its royalty and reporting obligations. (Compl. ¶¶ 21–27). MasterCard argues that Alexsam's underlying patents are invalid based on recent Federal Circuit case law, and seeks a declaration of their invalidity from this Court. (Answer ¶¶ 49–137).

While this case remained pending, MasterCard petitioned the Patent Trial and Appeal Board ("PTAB") for covered business method review of the licensed patents. (*See* ECF Nos. 125-3, 125-4). Alexsam opposed the petitions, on the ground that the license agreement's covenant not to sue eliminated MasterCard's standing to seek such declaratory relief.[2] (ECF No. 193-3 at 3). That covenant reads as follows:

> Alexsam hereby agrees and covenants to not at any time initiate, assert, or bring any claim (in any court, administrative agency, or other tribunal, anywhere in the world) against MasterCard, for any claim or alleged liabilities of any kind and nature, at law, in equity, or otherwise, known and unknown, suspected and

---

[2] The America Invents Act ("AIA") provides that "[a] person may not file a petition for a transitional proceeding with respect to a covered business method patent unless the person or the person's real party in interest or privy has been sued for infringement of the patent or has been charged with infringement under that patent." AIA § 18(a)(1)(B). "Charged with infringement" is defined as a "real and substantial controversy regarding infringement of a covered business method patent . . . such that the petitioner would have standing to bring a declaratory judgment in Federal court." 37 C.F.R. § 42.302(a).

2

>    unsuspected, disclosed and undisclosed, relating to Licensed Transactions arising
>    or occurring before or during the term of this Agreement.

(License Agmt. § 2.2) (emphasis added). The PTAB agreed with Alexsam, and dismissed MasterCard's petitions for lack of standing. *MasterCard Int'l Inc. v. Alexsam, Inc.*, No. CBM2017-00042, 2017 WL 4221130 (P.T.A.B. Sept. 21, 2017) (declining to review the '608 Patent); *MasterCard Int'l Inc. v. Alexsam, Inc.*, No. CBM2017-00041, 2017 WL 4221401 (P.T.A.B. Sept. 21, 2017) (declining to review the '787 Patent).[3]

During the course of litigation, questions arose regarding the construction of various patent claims, the interpretation of the license agreement, the preclusive effect of the PTAB decisions and the law of the case. Judge Gold resolved those questions in three Reports and Recommendations, which this Court now reviews.

## LEGAL STANDARD

When examining a report and recommendation, the court reviews *de novo* "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). However, where there are no timely objections, "the district court need only satisfy itself that there is no clear error on the face of the record." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a).

## DISCUSSION

### I. Patent Claim Construction

In the June 11, 2018 Report and Recommendation, Judge Gold constructed Alexsam's patent claims for a "debit/medical services card" system, a "loyalty card" system, and a

---

[3] The PTAB issued two decisions, corresponding to each patent. While only one of these decisions is provided in the Court record (ECF No. 193-4), they are identically worded.

"preselected information receiving device system." (June R&R 20–21).[4,5] Alexsam objects to these constructions, and so the Court reviews them *de novo*. *See* Fed. R. Civ. Proc. 72(b). MasterCard did not object to the June R&R.

### A. Appropriateness of Patent Claim Construction

Alexsam's first objection is that Judge Gold should not have engaged in patent claim construction in the first place. Alexsam argues that MasterCard has "already admitted that it has not paid for Licensed Transactions," which purportedly "constitutes a material breach" of the license agreement.[6] (ECF No. 188 at 1–2). This argument is unpersuasive. Before this Court reaches the question of whether MasterCard breached the License Agreement, it must necessarily construct the underlying patent claims. This is because, as Judge Gold correctly noted, the License Agreement "defines 'licensed transactions' as those covered by the patents." (June R&R 2; *see also* License Agmt. § 1.3). To adopt Alexsam's position would contravene a bedrock principle of federal patent law: that royalty obligations under a patent license agreement are not enforceable if the underlying patent is invalid. *Lear, Inc. v. Adkins*, 395 U.S. 653, 674 (1969) (citing "strong federal policy favoring the full and free use of ideas in the public domain"); *see also* Stephen Yelderman, *Do Patent Challenges Increase Competition?*, 83 U. Chi. L. Rev. 1943, 2004 (2016) ("One of the most significant judicial interventions to encourage patent challenges has been the

---

[4] The June R&R followed a claim construction hearing in accordance with *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996).

[5] Judge Gold also recommended in the June R&R that the Court reject MasterCard's contention that the phrase "transmitting a rejection code to said point-of-sale device if said pin entered does not correspond to said identification number" renders certain patent claims indefinite. (June R&R 18–20). MasterCard does not object to, and this Court finds no clear error with, this portion of the June R&R. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

[6] MasterCard disputes that it has admitted to breaching the license agreement. (ECF No. 191 at 3).

4

'unmuzzling' of licensees under [*Lear*] and its progeny."). Indeed, MasterCard asserts invalidity as an affirmative defense to the claimed breach. (*See* Answer ¶¶ 6, 8, 57, 62).

### B. "Debit/Medical Services Card"

Judge Gold constructed "debit/medical services card"[7] as "a card that can function as part of a multifunction card system as both a debit card and a medical services card, the different functions depending upon the database the system is directed to access when the card is used." (June R&R 10). Alexsam does not object to this construction per se. However, it does object to certain dicta in the June R&R that the debit/medical services card must be "swiped through a [point-of-sale] device." (ECF No. 188 at 3–4). The Court does not address this dicta, which had no bearing on Judge Gold's ultimate conclusions. *See Davis v. Post Univ., Inc.*, No. 9:18-CV-81004, 2019 WL 904790, at *1 (S.D. Fla. Feb. 22, 2019) ("Although Plaintiff objects to certain *dicta* in the Report, it is not necessary for the Court to adopt such *dicta* [in adopting a report and recommendation].") Judge Gold's construction of the "debit/medical services card" claim is therefore adopted.

### C. "Loyalty Card"

Alexsam further objects to Judge Gold's construction of "loyalty card"[8] as "a card, separate from a card used to purchase goods or services, used to reward a consumer's loyalty account at the point of sale in real time as a purchase takes place." (ECF No. 188 at 5). Alexsam concedes that a loyalty card may be a separate card, but disagrees that it must be a separate card. (*Id.* at 8). In support of this argument, it points to Patent Claim 58 of the '608 Patent, which makes reference to

---

[7] The description of the "debit/medical services card" system comprises Claim 32 of the '608 Patent. (R&R 1 at 11).

[8] The description of the "loyalty card" system comprises Claim 20 of the '608 Patent and forms an integral part of Claim 27 of the '787 Patent. (June R&R 13).

a "loyalty card" as part of a larger "multi-function card system." (*Id.* at 9). However, Judge Gold already considered and rejected this argument in thorough and convincing fashion:

> To be sure, some language in the specification described the preferred embodiment of the invention as a multifunction card system capable of performing all functions the specification describes. But while many of the patent claims begin by describing a "multifunction card system," '608 Claim 20 begins by describing a loyalty card system. If this difference is to be recorded any meaning, the distinction must be between cards capable of performing multiple functions, and those that function only as a loyalty card.

(June R&R 15). The Court agrees in full with this analysis.

Alexsam also objects to Judge Gold's construction of "loyalty card" on the grounds that he construed that term "with reference to the accused products." (ECF No. 188 at 7). This objection is based entirely on the transcript of the claim construction hearing held by Judge Gold, and not on his written Report and Recommendation. (*Id.* at 7–8). Accordingly, the Court may not consider it. *See* Fed R. Civ. P. 72(b) (permitting *de novo* review only of "specific written objections to the proposed findings and recommendations").

Judge Gold's construction of the term "loyalty card" is therefore adopted.

### D. "Preselected Information Receiving Device"

Finally, Judge Gold constructed the patent claim for a "preselected information receiving device"[9] as "a device, *such as an electronic mail device, facsimile device, or voice response device*, selected in advance from among two or more devices to receive the requested information." (June R&R 16) (emphasis added). Alexsam objects to the emphasized language above, solely on the grounds that the finder of fact might mistake it for an exclusive list of applicable devices. (ECF No. 188 at 13). On the contrary, Judge Gold's use of the words "such as" makes abundantly clear

---

[9] The description of the "debit/medical services card" system comprises Claim 31, Step E of the '787 Patent. (June R&R 11).

that the list is not exclusive. There is no risk of confusion to the factfinder. The Court adopts Judge Gold's construction of this patent claim in full.

## II. Plaintiff's Motion to File a Supplemental Complaint

On October 16, 2018, Judge Gold issued a Report and Recommendation denying Alexsam's motion to file a supplemental complaint. (October R&R 17). That supplemental complaint would have added a claim for breach of the license agreement's forum selection clause. (*Id.* at 2).[10] Neither party objected, and so this Court "need only satisfy itself that there is no clear error on the face of the record." *Ningbo Yang Voyage Textiles Co. v. Sault Trading*, No. 1:18-cv-1961 (ARR) (ST), 2019 WL 5394568, at *1 (E.D.N.Y. Oct. 22, 2019).

Finding no clear error,[11] the Court adopts the October R&R in its entirety. Alexsam's motion to file a supplemental complaint is therefore denied.

## III. The December Report & Recommendation

In the December 5, 2018 Report and Recommendation, Judge Gold denied MasterCard's motion for summary judgment and Alexsam's motion to dismiss. (Dec. R&R 12). MasterCard objects to the portion of the R&R regarding its motion for summary judgment. (ECF No. 206). Alexsam objects to the portion regarding its motion to dismiss. (ECF No. 205).

---

[10] The license agreement's forum selection clause provides that any dispute "arising out of" the contract must be brought solely and exclusively in the Southern District of New York or the Eastern District of New York. (License Agmt. § 17). Alexsam argued that MasterCard breached that clause when it sought covered business method review by the PTAB. (ECF No. 97 at 5–6).

[11] The Court should grant leave to amend a complaint when justice so requires, but not where it would be futile or cause undue delay. Fed. R. Civ. P. 15(d); *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). Judge Gold concluded, for a number of compelling reasons, that adding a claim for breach of the forum selection clause would be futile. (Oct. R&R 4–5). In particular, interpreting the forum selection clause to preclude the PTAB proceeding would render it void on the public policy grounds articulated in *Lear v. Adkins* and its progeny. (Oct. R&R 11–13); *see Lear*, 395 U.S. at 670; *Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 188 (2d Cir. 1977).

7

For the reasons stated below, MasterCard's objection is granted and Alexsam's objection is denied. Accordingly, the December R&R is adopted in part. MasterCard's motion for summary judgment is granted, and Alexsam's motion to dismiss is denied.

    A.  <u>Defendant's Motion for Summary Judgment</u>

Pending before the Court is MasterCard's motion for summary judgment, on judicial estoppel grounds. (ECF No. 193). The doctrine of judicial estoppel applies where: (1) a party's later position is clearly inconsistent with its earlier position; (2) the former position was adopted in some away by the Court in an earlier proceeding; and (3) the party asserting the two positions would gain an unfair advantage. *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001); *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019); *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1358 (Fed. Cir. 2013).

MasterCard argued before Judge Gold that Alexsam's broad interpretation of the covenant not to sue during the PTAB proceeding precludes Alexsam from seeking royalties in this forum.[12] (ECF No. 193-1 at 6). Alexsam opposed MasterCard's motion, arguing that whether or not the covenant not to sue prohibits a claim for declaratory relief before the PTAB is a separate issue from whether the covenant not to sue prohibits a claim for breach of contract before this Court. (ECF No. 195 at 15–16).

Agreeing with Alexsam, Judge Gold recommended that MasterCard's motion for summary judgment be denied. (Dec. R&R 12). MasterCard now objects to that recommendation (ECF No. 206), and so the Court reviews it *de novo*. *See* Fed. R. Civ. Proc. 72(b).

---

[12] In the PTAB proceeding, Alexsam successfully argued that the license agreement's covenant not to sue mooted MasterCard's Article III standing to seek declaratory review of the patent's validity. (ECF No. 193-3 at 3; ECF No. 193-4 at 15).

Judge Gold declined to apply judicial estoppel, on the ground that Alexsam's positions in this forum and the PTAB were not inconsistent: "[Alexsam] never contended that the covenant not to sue precluded its breach of contract claim, only [that it precluded MasterCard's] claim for declaratory relief." (Dec. R&R 5). MasterCard argues that this is a distinction without a difference: "the only way to strip a licensee of the right to bring a claim for declaratory relief against the patent is to eliminate the threat of paying royalties under that patent." (ECF No. 206 at 1).

The Court agrees with MasterCard. In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the Supreme Court held that, insofar as Article III is concerned, a patent licensee is not obligated to stop making royalty payments under a license agreement before seeking a declaratory judgment that the underlying patent is invalid. In resolving this difficult issue, the *MedImmune* Court contemplated a far easier hypothetical case: "There is no dispute [that the constitutional standing requirements] would have been satisfied if petitioner had taken the final step of refusing to make royalty payments under the . . . license agreement." *Id.* at 128. That hypothetical case is the one currently before this Court. MasterCard ceased royalty payments under the license agreement, believing the underlying patent to be invalid. (Compl. ¶¶ 21–27; Answer ¶¶ 71–72). Without the covenant not to sue, there would be no dispute that MasterCard had standing to seek a declaratory judgment of invalidity. When Alexsam argued before the PTAB that the covenant not to sue eliminates MasterCard's standing for declaratory relief, it also necessarily took the position that the same covenant prohibits a claim for royalties under the license agreement.

In other words, the refusal to pay royalties under a patent license agreement automatically provides the licensee with standing to pursue a declaration of invalidity. It does not matter that the PTAB merely held that the covenant not to sue precludes Alexsam from bringing a claim for patent

infringement.[13] The covenant not to sue cannot eliminate standing to seek a declaration of invalidity unless it also precludes the patent holder from bringing a breach of contract claim for royalties.

Alexsam does not agree that *MedImmune* stands for this principle. (ECF No. 207 at 3). However, a close reading of that case and its progeny demonstrates that MasterCard's interpretation is in fact correct, and that it controls the question of whether Alexsam is judicially estopped. A genuine threat of enforcement of intellectual property rights, including a claim for royalties under a license agreement, necessarily gives rise to Article III standing. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) (citing *MedImmune*, 549 U.S. at 126–127). In *Already*, the Supreme Court found that a trademark holder's covenant not to sue an infringer defeated declaratory judgment jurisdiction, because "[the infringer's] only legally cognizable injury—the fact that [the trademark holder] took steps to enforce its trademark—is now gone, and, given the breadth of the covenant, cannot be expected to recur." *Already,* 568 U.S. at 100. In *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350 (Fed. Cir. 2013), the Federal Circuit applied this principle in the context of judicial estoppel. The court found that a patent holder's commitment to not take legal action against a would-be infringer[14] had preclusive effect. *Id.* at 1358 ("If we rely on Monsanto's representations to defeat the appellants' declaratory judgment claims (as we do), those representations are binding as a matter of judicial estoppel.") This finding

---

[13] It is worth noting that the PTAB did not hold that the covenant not to sue precludes Alexsam *only* from bringing a claim for patent infringement. (ECF No. 193-4 at 15). This Court's determination is therefore not inconsistent with the PTAB decisions, just more expansive.

[14] While this commitment was not technically a covenant not to sue, the court made clear that it would have treated such a covenant in the same way. *Organic Seed Growers*, 718 F.3d at 1358. At issue was whether the Supreme Court's holding in *Already*, which involved a covenant not to sue, could be applied to the patent holder's mere "representation" that it would not sue the would-be infringers. *Id* at 1357–58. Accordingly, the existence of a covenant not to sue would only have made the court's decision easier.

of judicial estoppel was, in turn, crucial to the court's central holding that the would-be infringers did not have standing to seek a declaratory judgment of invalidity. *Id.* at 1360.

In reaching the opposite conclusion, Judge Gold relied on *Leviton Mfg. Co. v. Pass & Seymour, Inc.*, No. 17 Civ. 46 (BMC), 2017 WL 3084404, at *1 (E.D.N.Y. July 19, 2017). In that case, the court held that a patent holder's claim for breach of a license agreement was not a "claim of infringement." *Id.* at *3. As an initial matter, this Court is not bound by *Leviton*, and is instead required to follow the Federal Circuit's on-point holding in *Organic Seed Growers*. Furthermore, *Leviton* was decided in an entirely different context. It does not speak to the specific issue at hand: whether a demand for royalties in one forum necessarily creates standing to seek a declaratory judgment of invalidity in another forum. If the answer is yes, then Alexsam is judicially estopped from demanding royalties from MasterCard.

Alexsam's strong disagreement on this point stems, in part, from its erroneous reading of 35 U.S.C. § 321(a)(1)(B), the statute under which MasterCard petitioned the PTAB for declaratory review. Section 321(a)(1)(B) provides that a party may not petition the PTAB for declaratory review of a covered business method unless it (1) "has been sued for infringement of the patent," or (2) "has been charged with infringement under that patent." 35 U.S.C. § 18(a)(1)(B). Alexsam appears to believe that whether MasterCard is "charged with infringement" depends on whether Alexsam might bring a patent infringement suit against it. (ECF No. 195 at 18). That is not a correct reading of the statute.

A party is "charged with infringement"[15] if there is a "real and substantial controversy regarding infringement of a covered business method patent . . . *such that the petitioner would*

---

[15] While it was obvious to the PTAB that Alexsam's action for breach of the license agreement was not a "suit for infringement," less clear was whether it amounted to a "charge of infringement." (ECF No. 193-4 at 6–8, 9–12).

11

*have standing to bring a declaratory judgment in Federal court.*" 37 C.F.R. § 42.302(a) (emphasis added). As the PTAB recognized, the phrase "charged with infringement" therefore incorporates the standing requirements articulated in *MedImmune* and its progeny. (ECF No. 193-4 at 9) ("[I]n our analysis of whether Petitioner has standing on the basis of being charged with infringement, we have considered case law addressing when a party might have Article III standing to bring a declaratory judgment action.").

A demand for royalties pursuant to a license agreement is therefore a "charge of infringement" under 35 U.S.C. § 18(a)(1)(B). Particularly illuminating on this point is the PTAB's acknowledgment that if the covenant not to sue did not exist, MasterCard would undoubtedly have had standing to bring a declaratory judgment action before the PTAB:

> At first blush, it might appear [under *MedImmune*] that Petitioner is similarly positioned to assert standing since Patent Owner has demanded royalties allegedly due under the parties' License Agreement. However, the License Agreement additionally includes a "covenant not to sue" provision—which was not at issue in *MedImmune*—and we must consider the effect of that provision in our analysis. . . . The Supreme Court and the Federal Circuit have held [in *Already* and *Organic Seed Growers*] that a broadly-worded and unequivocal covenant not to sue for infringement may moot a dispute between the parties such that there no longer exists a "case or controversy" under Article III.

(ECF No. 193-4 at 10) (citing *Already*, 568 U.S. at 93–95 and *Organic Seed Growers*, 718 F.3d at 1357). While the PTAB ultimately concluded that the covenant not to sue eliminated MasterCard's standing, that does not change the fact that the standing rules in this case are governed by the principles articulated in *MedImmune* and its progeny. So when the covenant not to sue eliminated MasterCard's standing before the PTAB, it also estopped Alexsam's claim for royalties in this Court.

Alexsam calls this position "illogical." (ECF No. 207 at 6–7). It argues that if the covenant not to sue precludes it from enforcing the terms of the license agreement, then the entire agreement

12

is unenforceable. (*Id.* at 6). The Court disagrees, for two reasons. First, it is worth noting that the Court's determination is merely one of judicial estoppel. It does not make any findings with respect to contractual interpretation or the license agreement's enforceability. In arguing for a broad interpretation of the covenant not to sue, Alexsam precluded itself from making contradictory arguments before this Court that would have provided MasterCard with standing before the PTAB. This says nothing about the agreement's actual content or its enforceability. Second, Alexsam is merely estopped from enforcing the license agreement's royalty obligations. It is not necessarily precluded from suing for breach of other provisions contained in the agreement. (*But see* Oct. R&R 17) (barring, on different grounds, a claim for breach of the forum selection clause).

Alexsam also argues that MasterCard's motion for summary judgment is procedurally defective, because MasterCard fails to assert a judicial estoppel defense in its amended answer. (ECF No. 195 at 6–8). This argument is unavailing. Judicial estoppel is "not an affirmative defense within the meaning of the federal rules," but rather "an equitable doctrine invoked by the court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Accordingly, MasterCard "has not waived judicial estoppel—nor could it." *Green v. Liberty Ins. Corp.*, 220 F. Supp. 3d 842, 849 (E.D. Mich. 2016); *see also Mirando v. U.S. Dept. of Treasury*, 766 F.3d 540, 544 (6th Cir. 2014) (applying judicial estoppel upon being invoked by the defendant in its reply brief for summary judgment).

Finally, Alexsam argues that in the Second Circuit, judicial estoppel applies only to inconsistent factual positions, not inconsistent legal positions. However, the Second Circuit has not expressly held that judicial estoppel applies *only* to inconsistent factual positions,[16] and recent

---

[16] The Second Circuit often notes that judicial estoppel applies to inconsistent factual positions, but only where the case at hand involved inconsistent factual positions. *See Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d

decisions in this Circuit cast doubt on that proposition. *See Chevron Corp v. Donziger*, 833 F.3d 74, 127 (2d Cir. 2016); *Signature Fin. LLC v. Chicago Elite Cab Corp.*, No. 216CV6063DRHSIL, 2018 WL 1385896, at *4 (E.D.N.Y. Mar. 19, 2018) (noting that judicial estoppel applies "when a party has succeeded in maintaining a contrary legal position in another case."); *Embraer S.A. v. Dougherty Air Tr., LLC*, 348 F. Supp. 3d 246, 257 (S.D.N.Y. 2018) (noting that the "legal/factual position distinction" in judicial estoppel is "adopted by some courts" but is not "settled law"), *appeal withdrawn sub nom. Embraer S.A. v. Dougherty Air Tr., L.L.C.*, No. 19-171, 2019 WL 7598901 (2d Cir. July 23, 2019); *Lesser v. TIAA Bank, FSB*, No. 19-CV-1707 (AJN), 2020 WL 2570352, at *5 (S.D.N.Y. May 21, 2020) (noting that "[j]udicial estoppel is an equitable doctrine that prevents a party from improperly taking inconsistent legal positions"); *Morgan Art Found. Ltd. v. Brannan*, No. 18CV8231ATBCM, 2020 WL 469982, at *8 (S.D.N.Y. Jan. 28, 2020) (noting the same). Furthermore, while the question of whether judicial estoppel applies is generally a matter of regional circuit law, *see Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1071 (Fed. Cir. 2009), the Court here is also persuaded by the Federal Circuit's holding in *Organic Seed Growers v. Monsanto Co.* In that case, as here, the finding of judicial estoppel bore an essential relationship to a question of patent law. *Organic Seed Growers*, 718 F.3d at 1358 ("It is well-established that a party who successfully argues one position is estopped from later adopting a contrary position in a case involving the same patent."). Notably, *Organic Seed Growers* was heard on appeal from another court in this Circuit. *See Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 851 F. Supp. 2d 544, 550 (S.D.N.Y. 2012), *aff'd*, 718 F.3d 1350 (Fed. Cir. 2013).

---

113, 118 (2d Cir. 2004). It does not necessarily follow that the doctrine does not apply to inconsistent legal positions.

Alexsam is therefore judicially estopped from bringing a claim for royalties under the license agreement.[17] A district court may grant summary judgment on the basis of judicial estoppel, which is reviewed only for abuse of discretion. *See Marshall v. Honeywell Tech. Sys. Inc.*, 828 F.3d 923, 928 (D.C. Cir. 2016) (collecting cases showing that a majority of circuits hold this view). MasterCard's motion for summary judgment is therefore granted.[18]

B. Plaintiff's Motion to Dismiss

Also pending before the Court is Alexsam's motion to dismiss MasterCard's counterclaims that the underlying patents are invalid, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 194). Alexsam argues that because it has only brought a claim for breach of contract (and not for patent infringement) there is no live case or controversy with respect to the patents' validity. (ECF No. 194-1, 6–8).

In the December R&R, Judge Gold recommended that the motion be denied under the law of the case doctrine. United States District Judge Brian M. Cogan, who was then presiding over

---

[17] All three elements of judicial estoppel are satisfied. Alexsam advocated inconsistent positions by demanding royalties under the license agreement in this Court, while insisting before the PTAB that MasterCard did not have standing because it was not "charged with infringement." As noted *supra*, a demand for royalties under a license agreement is a charge of infringement. *See* 35 U.S.C. § 321(a)(1)(B); 37 C.F.R. § 42.302(a). The PTAB adopted Alexsam's position in its decision to dismiss MasterCard's petition for covered business method review: "in determining whether MasterCard has met the standing requirement to initiate this [covered business method] review, we have . . . determine[d] that [MasterCard] has not been charged with infringement by [Alexsam]." (ECF No. 193-4 at 15). And Alexsam would gain an unfair advantage in this forum if it were not estopped: either the covenant not to sue prohibits any demand for royalties under the license agreement, or else MasterCard has standing before the PTAB to seek declaratory review. Alexsam cannot avail itself of these two contradictory positions.

[18] Of course, summary judgment is not granted as to any other remaining issue. For instance, the Court makes no finding as to whether Alexsam is precluded from arguing that MasterCard failed to comply with other provisions of the license agreement, such as the reporting requirements. (Compl. ¶ 12). *MedImmune* is only concerned with the relationship between the patent holder's claim for royalties and the licensee's standing to seek declaratory relief. *See MedImmune*, 549 U.S. at 128.

15

this case, previously denied a motion by Alexsam to dismiss on standing grounds MasterCard's patent counterclaims for a declaratory judgment of invalidity. (ECF No. 31 ¶ 2) (holding that "defendant's counterclaims meet the requirements to bring claims for declaratory relief under the Declaratory Judgment Act."). Judge Gold found that Alexsam's instant motion to dismiss amounts to the same motion denied by Judge Cogan. (Dec. R&R 9). Alexsam objects, on the ground that the law of the case doctrine does not apply here. (ECF No. 205 at 2). The Court therefore reviews this portion of the December R&R *de novo*.

Under the law of the case doctrine, the Court "should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997). Alexsam insists that Judge Cogan expressly deferred ruling on the question of standing. In support of this argument, it points to the following portion of Judge Cogan's order:

> Whether declaratory relief is appropriate will depend, in part, on how the Court (or a jury) interprets the License Agreement, something the Court cannot do as a matter of law in the context of the current motion . . . If the Court determines that the interpretation of the License Agreement requires consideration of plaintiff's patents, it may require recharacterization of some or all of Counts I through IV as affirmative defenses, or it may dismiss them without prejudice for defendant to raise the issues as the basis for denial of the allegations in plaintiff's complaint.

(ECF No. 31, ¶¶ 2–3). "This portion of the order makes it clear," Alexsam argues, "that Judge Cogan deferred the question of whether MasterCard had standing to raise patent-related counterclaims." (ECF No. 205 at 3).

This is a misreading of Judge Cogan's order, which clearly answers the standing question in the affirmative: "Counts I through IV of defendant's counterclaims meet the requirements to bring claims for declaratory relief under the Declaratory Judgment Act." (ECF No. 31 at 1). The excerpt Alexsam cites above refers to the question of whether declaratory judgment would ultimately be appropriate on the merits. Judge Gold therefore correctly applied the law of the case

16

doctrine. Alexsam muddles these two questions, arguing that "[t]he analysis of the issue of MasterCard's standing to raise Declaratory Judgment counterclaims for non-infringement and invalidity is ripe for a decision." (ECF No. 205 at 1). In any event, even if the law of the case doctrine did not apply, Judge Gold would have come to the same conclusion on Alexsam's motion to dismiss. He determined that Alexsam's objection to the December R&R relies heavily on case law that is nonbinding and unpersuasive. (Dec. R&R 10–11). Agreeing in full, this Court denies Alexsam's motion to dismiss.

## CONCLUSION

Accordingly, the June R&R is adopted in full. The Court accepts all of Judge Gold's patent claim constructions. The October R&R is also adopted in full, and so Alexsam's motion to file a supplemental complaint is DENIED. The December R&R is adopted only with respect to Alexsam's motion to dismiss, which is DENIED. Alexsam is judicially estopped from demanding royalties under the license agreement, and so MasterCard's motion for summary judgment is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
June 17, 2020

/s/
I. Leo Glasser            U.S.D.J.