UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALEXSAM, INC.,

                Plaintiff,                      MEMORANDUM & ORDER

       v.                                     15-CV-2799 (ILG) (SMG)

MASTERCARD INTERNATIONAL
INCORPORATED,

                Defendant.
------------------------------------------------------------x

GLASSER, Senior United States District Judge:

Plaintiff Alexsam, Inc. ("Alexsam") seeks to add a new claim for breach of contract related to the indemnity obligations of defendant Mastercard International Inc. ("Mastercard") under the license agreement and to add alternative claims for unjust enrichment, *quantum meruit*, conversion, and patent infringement to the complaint "after learning for the first time" in the Court's June 17, 2020 Memorandum and Order that "it no longer can seek any royalties under the Agreement." Alexsam's Mem. in Supp. of Third Mot. to Amend. ("Alexsam's Mem."), Dkt. 252 at 16–17. For the reasons that follow, the motion is DENIED.

## BACKGROUND

This is the third time that Alexsam has moved to amend the complaint. On July 29, 2016, Alexsam moved for leave to amend the complaint to include new claims of fraud, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. Dkt. 68. This motion was denied for futility. Dkt. 113; Dkt. 132. On June 11, 2018, Alexsam moved for leave to file a supplemental complaint, seeking to add a claim for breach of the license agreement's forum selection clause based on Mastercard's filing of two petitions for covered business method review

1

before the Patent Trial and Appeal Board. Dkt. 187. This motion was also denied for futility. Dkt. 200, 237.

Alexsam now moves for leave to amend the complaint to include a new claim for breach of contract based on the indemnification provision in the parties' license agreement and alternative claims for unjust enrichment, *quantum meruit*, conversion, and patent infringement. On November 5, 2020, the Court heard oral argument on the motion. Min. Entry dated Nov. 5, 2020, Dkt. 259. The Court reserved decision and directed the parties to file supplemental papers to address the intent and meaning behind the indemnification provision. Oral Arg. Tr. 41:7-10, Dkt. 260-1. On November 19, 2020, the parties filed their supplemental papers. Dkt. 260, 261.

## LEGAL STANDARD

Under Fed. R. Civ. P. § 15(a), when more than 21 days have passed since responsive pleadings have been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." A court may deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Second Circuit has recognized that it is not an abuse of discretion for a district court to deny a motion for leave to amend the complaint based upon a party's attempt to "steer a new course" following an adverse decision by the court. *Arrowood Indem. Co. v. King*, 699 F.3d 735, 742 (2d Cir. 2012) ("Appellants did not act until after the summary judgment motions had been decided adversely to them. Then, with the legal mine field mapped in the district court's decision, Appellants sought leave to steer a new course hoping to snatch away the victors' success. Denial of additional time to amend in those circumstances was hardly an abuse of the discretion accorded the district court[.]").

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Thus, accepting the facts pleaded as true, Alexsam's proposed amended complaint must state a claim that is plausible on its face from which the Court can draw the reasonable inference that the claims have merit. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

### I. Alternative Causes of Action

Alexsam's motion for leave to amend is based on many of the same facts underlying its breach of contract claims for royalties asserted in the original complaint, and Alexsam offers no compelling justification for why it waited until now to pursue the alternative causes of action. *See generally Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, No. 15-CV-6519 (ILG), 2020 WL 3403116, at *2 (E.D.N.Y. June 18, 2020) (denying a motion to reopen discovery based on a new damages theory where reason for delay was that "[plaintiff] was still hoping to prevail on" its original claim). Alexsam argues that the Court has, among other things, refused to determine whether the license agreement terminated early, "which would have guided AlexSam's decision whether to seek the Court's permission to amend its complaint to add alternative claims much earlier in the proceedings." Alexsam's Mem. at 3–4. However, the Court is unmoved by this explanation for Alexsam's lengthy delay. Alexsam could have asserted the causes of action for unjust enrichment, *quantum meruit*, conversion, and patent infringement as alternative theories of relief in the original complaint or, at the very least, shortly thereafter in a motion to amend. Indeed, Alexsam admits that it was when Mastercard filed its answer and counterclaims over five years

3

ago that Alexsam first learned that Mastercard was alleging that the license agreement terminated early and that the patents were invalid. *Id.* at 16; *see also id.* at 18 ("[P]atent infringement was first raised as an alternative theory in AlexSam's June 16, 2016 letter and was recognized by the Court during the June 29, 2016 hearing."). It is not difficult to imagine Alexsam moving to amend the complaint to add these alternative causes of action at that time. Although Alexsam asserts that its previous attempts to amend the complaint were thwarted, it is clear from a review of the docket that Alexsam has never before attempted to assert claims for unjust enrichment, *quantum meruit*, conversion, and patent infringement. Alexsam is merely attempting to "steer a new course" following an adverse decision by this Court. *Arrowood Indem. Co.*, 699 F.3d at 742.

Because Alexsam unduly delayed in moving to add alternative claims for unjust enrichment, *quantum meruit*, conversion, and patent infringement, this Court denies Alexsam's motion to amend to add such alternative claims.

## II.   Breach of the Indemnification Provision

### A. Relevant Provisions in the License Agreement

The indemnification provision set forth in the license agreement states:

> MasterCard shall defend, indemnify, and hold harmless Alexsam from and against any third-party claims or demands, liabilities to third parties, or expenses (including attorneys' fees and costs) arising from such claims or demands, for any injury or damage, including, but not limited to, any personal or bodily injury or property damage arising out of or resulting in any way from any defect in and/or the making, using, selling or offering to sell, and/or the processing of any Licensed Transaction.

License Agreement ¶ 9.1, Dkt. 1-6. In turn, the phrase "Licensed Transaction" is defined as

> each process of activating or adding value to an account or subaccount which is associated with a transaction that utilizes MasterCard's network or brands wherein data is transmitted between a POI Device and MasterCard's financial network or reversing such process, provided that such process is covered by one

4

>   of the Licensed Patents. Such Licensed Transaction includes the entire value chain and all parts of the transaction and may involve other parties including but not limited to: issuing banks, acquiring banks, processors, merchants, card vendors and third party marketing firms. To the extent that these other parties participate in a Licensed Transaction, they will also be licensed under this Agreement, but only to the extent of such parties' participation in a Licensed Transaction

*Id.* ¶ 1.3. The indemnification provision survives termination of the license agreement. *Id.* ¶ 7 ("The provisions of paragraphs . . . 8–10, 12, 14, and 15 shall survive the termination of this Agreement.").

### B. The Parties' Arguments

Alexsam broadly argues in its brief that "third parties are now claiming to be sublicensed under the Agreement" and that, "[r]egardless of whether the Agreement terminated early or not, MasterCard is contractually obligated to indemnify AlexSam for these third-party claims, which MasterCard has refused to do." Alexsam's Mem. at 2. In this regard, Alexsam cites to an action for patent infringement that it brought against IDT Corporation ("IDT") in the Eastern District of Texas in 2007. In that case, the Federal Circuit upheld the district court's determination that activations taking place over the SafeNet system were sublicensed under the license agreement between Alexsam and Mastercard. *See Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1345–46 (Fed. Cir. 2013). Alexsam alleges in its brief that "MasterCard has never compensated AlexSam for the licensed SafeNet transactions, nor has MasterCard ever reimbursed AlexSam for the expenses, costs or fees associated with defending against IDT's claim of license under the Agreement." Alexsam's Mem. at 7.

Mastercard, in opposition, argues that "Alexsam's claim for indemnification is based on the same claim for royalties for Licensed Transactions . . . and the indemnification provision does not as a matter of law cover Alexsam's claims for royalties *against* Mastercard (or *against* third

parties).” Mastercard's Opp. to Alexsam's Third Mot. to Amend ("Mastercard's Mem.") at 14, Dkt. 254. Rather, Mastercard asserts, the indemnification provision applies to third-party claims that are made *against* Alexsam for damages or injury.

In its reply, Alexsam argues that it "has suffered the very loss that MasterCard acknowledges the indemnity provision[] covers." Alexsam's Reply at 6, Dkt. 256. Alexsam explains that

> on November 8, 2017, [it] was *sued by* WEX Health, Inc. ("WEX Health") in the Eastern District of Texas for claims related to a license agreement between the parties, and in part, WEX Health claimed that it was covered under the MasterCard Agreement and therefore that it was seeking reimbursement from AlexSam for royalties paid. *See WEX Health, Inc. v. AlexSam, Inc.*, 2:17-CV-733-RWS-RSP (E.D. Tex. Nov. 8, 2017). MasterCard was aware of the *WEX Health* Case at the time, and it even responded to WEX Health's subpoena in that case. MasterCard was, and still is, responsible for AlexSam's defense of WEX Health's claims related to the MasterCard Agreement pursuant to the Agreement.

*Id.*[1] Alexsam further explains that, on July 24, 2020, it "put MasterCard on formal notice of its demand for indemnification for several claims related to the MasterCard Agreement in which the third party is claiming to be a sublicensee" and that "MasterCard has denied all responsibility for indemnifying AlexSam." *Id.*[2] Alexsam also states that it "has never taken the position that MasterCard is responsible for all expenses and fees incurred for bringing a claim of patent infringement against a third party"; rather, it contends that "MasterCard must indemnify AlexSam for those damages resulting from a third party's claims (including but not limited to a

---

[1] According to Alexsam, the *WEX Health* case settled on the eve of trial in January 2019. Alexsam's Mem. at 12.

[2] The Court notes that Alexsam has attached the July 24, 2020 letter to its supplemental papers. Ltr. dated July 24, 2020, Dkt. 261-1. This letter does not refer to the *WEX Health* case. Rather, it refers to the *Aetna* case, which is discussed below, and several other cases that are not discussed in the parties' briefs. Alexsam has also attached Mastercard's response to the July 24, 2020 letter. Email dated July 31, 2020, Dkt. 261-2.

counterclaim) that relate to the MasterCard Agreement (*e.g.*, a claim of sublicense under the Agreement)." *Id.* at 7.

In its supplemental brief filed after oral argument, Alexsam makes the same or similar arguments that it made in its initial papers. *See, e.g.*, Alexsam's Mem. on Indemnification at 11, Dkt. 261. Specifically, Alexsam asserts that, in the *IDT* case, "MasterCard should have indemnified AlexSam for at least the amount AlexSam was unable to collect and the fees and expenses incurred as a result of IDT's claim against AlexSam for coverage under the Agreement." *Id.* Alexsam further asserts that Mastercard was obligated to defend Alexsam in the *WEX Health* case. *Id.* at 12.

Alexsam also makes one new argument with respect to a case called *Alexsam, Inc. v. Aetna, Inc.*, D. Conn. No. 3:19-CV-1025 (VAB).[3] Alexsam argues that Mastercard should defend, indemnify and hold harmless Alexsam in relation to "Aetna's claim that certain of its accused products are licensed under the Agreement[.]" Alexsam's Mem. on Indemnification at 12. Alexsam notes that the *Aetna* case is still ongoing and that Alexsam is moving for reconsideration of the court's order granting Aetna's motion to dismiss. *Id.* at 6; *see AlexSam, Inc. v. Aetna, Inc.*, No. 3:19-CV-1025 (VAB), 2020 WL 5502323, at *1 (D. Conn. Sept. 11, 2020) (granting Aetna's motion to dismiss the second amended complaint).

In its supplemental brief, Mastercard asserts that "a claim brought by a third-party (i.e., by others, not Alexsam or Mastercard) against Alexsam" for "damages or injury suffered by that third-party (not Alexsam) arising out of Mastercard's processing of Licensed Transactions, including developing and implementing systems and processes [for] such Licensed Transactions, would

---

[3] Alexsam did not refer to or describe the *Aetna* case in its initial papers on the motion to amend and only briefly mentioned the case during oral argument. Oral Arg. Tr. 10:4-8.

7

ordinarily be covered under the indemnification clause." Mastercard's Mem. on Indemnification at 5–6, Dkt. 260. Mastercard provides hypothetical examples of such covered claims, including a third-party claim against Alexsam for (1) "damages or injuries suffered in a fall in Mastercard's processing center responsible for processing Licensed Transactions" or (2) "monetary damages suffered by a bank or retailer or another third party resulting from Mastercard's implementation of processing systems (or malfunction of such processing systems) to perform Licensed Transactions," such as "improperly routing transaction data over the processing network, loss or breach of customer data, or somehow overcharging or improperly charging a cardholder or bank for Licensed Transactions processed using such systems implemented by Mastercard." *Id.* at 6. Therefore, because the dispute at issue in the *WEX Health* case stems from Alexsam seeking royalties it alleged were owed to itself, Mastercard argues that the indemnification clause does not apply to cover any claims asserted in the *WEX Health* case. *Id.* at 6–7.[4]

### C. The Proposed Claim for Breach of the Indemnification Provision is Futile

Unlike the proposed alternative causes of action, which could have been asserted in the original complaint or shortly thereafter, Alexsam would not have been able to make allegations in the original complaint with respect to a claim for breach of the indemnification provision based on the *WEX Health* case or the *Aetna* case because both cases were not commenced until years later—2017 and 2019 respectively. Alexsam's Mem. on Indemnification at 5, 6. The Court notes, however, that the *IDT* case was commenced in 2007, and Alexsam thus could have included a claim in the original complaint for breach of the indemnification provision based on Mastercard's

---

[4] Mastercard has attached several documents relating to the *WEX Health* action to its supplemental papers. *See* Joint Mot. to Dismiss, Dkt. 260-2; Order Granting Joint Mot. to Dismiss, Dkt. 260-3; Compl., Dkt. 260-4; Answer, Dkt. 260-5; Am. Compl., Dkt. 260-6.

alleged failure to indemnify Alexsam in the *IDT* case. Nevertheless, the proposed claim for breach of the indemnification provision is futile.

Indemnification provisions in contracts "must be given a narrow reading." *Fernandez v. Kinray, Inc.*, No. 13-CV-4938 (ARR)(SMG), 2014 WL 12778829, at *3 (E.D.N.Y. Feb. 5, 2014). "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Gibbs-Alfano v. Burton*, 281 F.3d 12, 19 (2d Cir. 2002) (quoting *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989)). "The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Hooper Assocs., Ltd.*, 74 N.Y.2d at 491–92.

Here, the indemnification provision broadly applies to third-party claims or demands, liabilities, or related expenses for *any* injury or damage, "*including, but not limited to*, any personal or bodily injury or property damage, arising out of or resulting in any way from" a defect *and/or* the making, using selling or offering to sell, *and/or* the processing of a licensed transaction. License Agreement ¶ 9.1. Indemnification, in other words, is *not* limited to a specific list of items. The Court commented during oral argument that this provision, which includes claims for personal or bodily injury or property damage in the context of a patent license, is possibly based on language taken from a form book or template. Oral Arg. Tr. 37:21–38:10. The Court declines to interpret this boilerplate language to apply to any claims for indemnification in the *IDT* case or *Aetna* case, which were both commenced by Alexsam, not a third party, for patent infringement. There is no indication that Mastercard intended to defend, indemnify, and hold harmless Alexsam in Alexsam's own actions seeking to recover damages. Additionally, although Alexsam argues that the indemnification provision applies to counterclaims asserted by third parties, *see* Alexsam's

9

Reply at 6, 7; Alexsam's Mem. on Indemnification at 12, neither the parties nor the Court's independent research have produced any evidence that the defendants in the *IDT* case or *Aetna* case made any counterclaims.

The Court also agrees with Mastercard that WEX Health's claim against Alexsam "was in essence, a defense to, and stems from, Alexsam's affirmative offensive efforts to collect or retain royalties it alleged were owing to itself" and not the type of third-party claim that the indemnification provision was intended to cover. Mastercard's Mem. on Indemnification at 6.[5]

Thus, because the indemnification provision would not cover any of the claims asserted in the *IDT*, *Aetna*, or *WEX Health* cases, any amendment to add a claim for breach of the indemnification provision would be futile.

## CONCLUSION

Alexsam's motion for leave to amend the complaint is DENIED in its entirety.

SO ORDERED.

/s/
I. Leo Glasser, U.S.D.J.

Brooklyn, New York
January 6, 2021

---

[5] The Court also notes that "[u]nder New York law, when an indemnitor had notice of the claim against it and an opportunity to take over the defense, the indemnitee need only show potential liability, *i.e.*, that [the] indemnitee could have been found liable at the trial of the underlying action." *Koch Indus., Inc. v. Aktiengesellschaft*, 727 F. Supp. 2d 199, 222–23 (S.D.N.Y. 2010) (collecting cases). By contrast, "[w]hen the indemnitor had no notice or opportunity to defend, the indemnitee must demonstrate 'actual liability' on the underlying claim." *Id.* (quoting *Atl. Richfield Co. v. Interstate Oil Transp. Co.*, 784 F.2d 106, 113 (2d Cir. 1986)). Here, Alexsam alleges that "MasterCard was aware of WEX's claims against AlexSam and was also served with a third-party subpoena, in response to which MasterCard produced documents to WEX." Alexsam's Mem. on Indemnification at 7. Such allegations are insufficient to show that Mastercard had notice of the claim *against it* and an opportunity to take over the defense in the *WEX Health* case before the case settled. Alexsam also has not demonstrated "actual liability" on the underlying claim.